UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Andre Sylvester Watts, :
13799083 TDC,

    Petitioner, :

v

Harley Lappin, Director :
of Bureau of Prisons,

    Respondents. :

06-1955 RJL

RECEIVED
MAY 2 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MOTION TO TAKE JUDICIAL NOTICE

   Comes Now Andre Sylvester Watts, Secured Party Creditor, sui juris, hereby move the district court pursuant to Rule 201 of the Federal Rules on Evidence to order respondent to discpline his subordinates: SIS Pitt for obstructing petitioner from obtaining medical treatment.

   The motive for SIS Pitt actions is he seeks revenge because petitioner has complained of him trying to use another inmate to elicit petitioner as a jailhouse informant and laison with his network. Moreover, his wife is his conspirator wherein she also attempted to elicit petitioner as her informant on a occassion that was noted to members of Congress. Since thin, SIS Pitt has been an opportunist against petitioner, so it obvious why SIS Pitt is obstructing petitioner access to medical treatment.

Petitioner sought to have his blood pressure checked on May 22, 2007 and the medical nurse Hornsby and Mitchell refuse to check petitioner blood pressure. Their actions are motivated by retaliation because of pending investigations Virginia State Discpline Board. Petitioner reported the refusal to J unit officer and he noted the dereliction in J unit log.

On May 22, 2007 around 7:55 p.m. Case Manager Hall was visiting the J Pow and petitioner expressed to her that he was feeling whoozy, dizzy and sweating internally, which is symtoms of high blood pressure and petitioner explained that said nurses refused medical treatment and that the Lieutenant should be contacted to report unprofessional conduct.

On May 22, 2007 the petitioner was advised by the J unit officer, as conveyed by Ms. Hall that the Lientenant would be accessible to petitioner to report said unprofessionl conduct. Upon arriving at the Main Corridor where their offices are located. Petitioner was instructed by Officer Bowen that the Lieutenant is around the corner. Once in the office, there was SIS Pitt, Lieutenant Vandenberg and Henger. SIS Pitt initiated an inquiry to petitioner by saying are you here for protective custody. Petitioner said no. Lieutenant Vandenberg remained silent. Then Lieutenant Henger initiated his inquiry by saying what's the problem and petitioner explained that the nurses refuse to take petitioner blood pressure and that petitioner is fully aware of the symtoms of high blood pressure and that he (petitioner) was feeling those symtoms and that the nureses: Hornsby and Mitchell refused take petitioner blood pressure out of retaliation. Henger response was that I am not the medical and that's when petitioner came to the realization that there weren't going to be any professionalism given and that they were also members of the complicity that they seek any form of revenge against petitioner, with no regards for his life threatening medical condition of high blood pressure

On May 23, 2007 around 5:30 p.m. petitioner was still feeling the symtoms of high blood pressure and approach a Lieutenant name Stiger and explained to him that petitioner was

experiencing whozziness, dizziness and internal sweating. He (Stiger) dispatched the medical personel and noted that he was sending petitioner to medical to have his blood pressure checked. The hospital approved and when petitoner was proceeding and arrived, SIS Pitt refused to open the door of entry to the medical window in the main corridor. He (Pitt) gestured to petitioner to leave the area and petitioner did so. It obvious that Pitt had heard the radio communication between Stiger and the Medical personel, and that why it was so easy for him to obstruct petitioner entry to medical window area, that resulted in petitioner once again being denied the opportunity to get his blood pressure checked. SIS Pitt is simply an opportunistic against petitioner because petitioner didnt conceded to being a informant by an elicit tactic through another that Pitt and his wife often does for amplifying their network. Petititoner Pitt and his wife tactic to members of Congress (Eleanor Holmes Norton) and petitioner had no knowledge of what the actual outcome of the investigation was.

Hence, the district court normally doesn't interfer with the prison officials method of operation unless its violates a prisoner rights based on the constitution, statutes, or regulation. Additionally, if the prisoner is in immenient danger. The district court will thin order that the prison official operate in conformity with the regulation or statutes.

For example, 28 CFR 541.12(4) in relevant part:

> **You have the right to health care, which includes nutitious meals proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet article and medical and dental guidelines.**

See also: 28 CFR 541.12(1) in relevant part:

> **You have the right to expect that as human being you will be treated respectfully, impartially, and fairly by al personel.**

In the instant cause, the district court can issue a writ of habeas corpus upon Taking Judicial Notice that the petitoner is being treated contrary to the regulation as it says that a prisoner is entitled to health care, and expect to be treated like a human being, respectfully, impartially, and fairly by all personel. Based on the assertions of petitioner he has not been being treated accordingly and the district court should issue a order directing the respondent to discpline his subordinates named herein, and that should include, and not limited to, demotion, suspension, and removal. See P.S. 3420.09 Attachment A. Moreover, order that all husband and wife personel and other forms of nepotism at USP Lee be discontinued because it jeopardizes the orderly running security of the institution; everytime a wife has a conflict with a male inmate, whether legitmate or illegitmate, she reports it to her husband and he immediately seek revenge against the prisoner. This instance also occures with family members. It is prevalent here in USP Lee and more dangerous to the inmate because all the staff are white and the vast majority of the population is black inmates.

This is not a case that the court should turn a death ear to and commence a transfer order to the Western District of Virginia Court under the notion that that is the proper venue, forasmuch as inmate here at USP Lee have continously petition the Western District and same Magistrate and Judges deny the petitions inter alia, as though its an conspiracy to allow USP Lee to operate in violation of a prisoner constitution, statute or regulatory protected libery interest.

The respondent has carelessly delegated authority to USP Lee personel who have shown to be derelic, racist and retaliatory and such character must not continue and can be remedied by the court issuing the writ of habeas corpus. See e.g. Perry v Ralston, 635 F.2d 740 (1980). In that case, the district court held that it wasn't going to issue the writ of habeas corpus by virtue of the fact that the prisoner disagree with the medical treatment being give; nonetheless if there was a denial of medical treatment. Then the

district court could issue the writ of habeas corpus and order the prison officials stop denying the prisoner medical treatment.

Because high blood pressure is a deadly condition and SIS Pitt, Nurse Hornsby, Mitchell and Lieutenant Henger and Vandenberg refuse to discpline or force the conformity of the regulation governing a prisoner right to health care. Than it would not be far fetch to say at this time the petitioner is in immenient danger and the court should Take Judicial Notice hereof forthwith. See Ibrahim v D.C., 134 DWLR 2335 (Sept.8, 2006). The district court took Judicial Notice that the prisoner was in immenient danger.

For the foregoing reasons, the district court should not transfer this motion; instead retain jurisdiction and issue the writ of habeas corpus, or in alternative, issue a Show Cause Order.

Executed by: ANDRE SYLVESTER WATTS - May 23, 2007.

Without Prejudice
UCC 1 - 207

*Andre Sylvester Watts(c)*

Andre Sylvester Watts(c)
Secured Party Creditor
in behalf debtor ANDRE
SYLVESTER WATTS, ens legis

a. <u>Recusal To Discuss Employment</u>. In certain instances, a procurement official may obtain permission to withdraw from further participation in a procurement to discuss future employment with a competing contractor. An eligible procurement official may, in accordance with specific procedures in the regulations, request authorization to be recused from participation in the procurement. A procurement official is not eligible for recusal if, during the period beginning with the issuance of a procurement solicitation and ending with the award of a contract, he or she has participated personally and substantially in the evaluation of bids or proposals, the selection of sources, or the conduct of negotiations.

An individual may not commence discussions with a competing contractor until he or she has received written approval of the recusal request from his or her supervisor. Rejection of a recusal request is not an adverse personnel action.

b. <u>Post-Employment Restrictions For Procurement Officials</u>. The Procurement Integrity Act places restrictions on employees involved in procurement who leave federal service. A former procurement official cannot, for one year after his or her last personal and substantial involvement in a procurement in excess of $10,000,000 accept compensation from such contractor as an employee, officer, director, or consultant. This does not prohibit former procurement officials from accepting compensation from any division or affiliate of a contractor that does not produce the same or similar products or services for which the employee contracted while a government employee.

/s/
Kathleen Hawk Sawyer
Director

---

### Standard Schedule of Disciplinary Offenses and Penalties

1. This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed. The offenses listed are not inclusive of all offenses.

2. Ordinarily, penalties imposed should be within the range of penalties provided for an offense. In aggravated cases, a penalty outside the range of penalties may be imposed. For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties. When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3. The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty. The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal. While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal. This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons. For example, if an employee failed to respond to an emergency, ever if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4. Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5. Suspension penalties on this schedule refer to calendar days. Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6. The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.